## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICK E. TORRES<br>754 Memorial Boulevard, Apt 202<br>Tobyhanna, PA 18466 | :<br>:<br>: CIVIL ACTION<br>: |
| Plaintiff, | : No.: _____ |
| v. | : |
| BREAKWATER HOLDINGS, LLC, d/b/a<br>JERSEY MIKE'S<br>410 Lincoln Avenue<br>East Stroudsburg, PA 18301<br>  and<br>BREAKWATER Managements, LLC,<br>d/b/a JERSEY MIKE'S<br>410 Lincoln Avenue<br>East Stroudsburg, PA 18301 | : **JURY TRIAL DEMANDED** |
| Defendants. | |

## CIVIL ACTION COMPLAINT

Erick E. Torres (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] The thrust of Plaintiff's lawsuit is that he was not hired by Defendants for expressing

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Such claims would identically mirror claims already asserted herein. The reference to the PHRA in this introduction section is thus only for notice purposes.

a concern of discriminatory treatment. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff timely files this lawsuit within 90 days of receiving a notice of case closure and/or right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Breakwater Holdings, LLC and Breakwater Managements, LLC (collectively, "Defendants") are a joint enterprise operating franchises known as Jersey Mike's. Defendants upon information and belief share resources, jointly operate and manage restaurants, and would have both jointly employed Plaintiff (had Plaintiff been hired).[2]

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a Hispanic male.

12. Plaintiff applied for employment to work within (and for) Defendants, doing business as "Jersey Mike's Subs."

13. If hired, Plaintiff would have physically worked for Defendants at their 410 East Lincoln Avenue, East Stroudsburg, PA 18301 location (the "East Stroudsburg location").

14. The East Stroudsburg location of Defendants had been opened (as a franchise) on or about November 3, 2021. Defendants were engaging in hiring in anticipation of the restaurant opening (and naturally for expected business needs).

15. Plaintiff had applied on or about October 27, 2021 (roughly 1 week before the restaurant was to open to the public) in response to online job postings for employment with Respondents.

---

[2] When an individual pursues a non-hire claim, they lack typical information about corporate data of Defendants that an existing employee would have access to within the entity hierarchy. Plaintiff may therefore amend the instant lawsuit upon discovery about and concerning Defendants' full organizational structure (inclusive of other affiliated entities).

16. Plaintiff was interviewed via zoom (by video) on or about November 1, 2021, and on or about November 4, 2021 Plaintiff was offered a job with Defendants. In response to Plaintiff's Charge previously filed with the Equal Employment Opportunity Commission ("EEOC"), Defendants concede Plaintiff was in fact definitely and conclusively offered a job.

17. Plaintiff was **to be** scheduled, oriented, and hired as a crew / team member performing various labor-related duties with an opportunity to grow within Defendants' leadership team.

18. By November 9, 2021, Plaintiff had completed all requested paperwork that had just been recently provided to him. Plaintiff returned all such onboarding paperwork to Defendants to commence employment quickly. *This paperwork however is commonly prepared and submitted on one's first day of employment.*

19. Plaintiff was led to believe in his interview that he would have been informed very quickly when his schedule would definitely start. Plaintiff's delay through the week of November 9th was already surprising (as to a communicated start date). Moreover, Defendants have been advertising online that employees would be hired on the spot upon application.

20. Plaintiff continued to follow up with Ashley Quille (from Human Resources) and Kirsten Todd (General Manager). He was being completely ignored about a potential or confirmed start date or communications about definitive scheduling.

21. Plaintiff was to work in a predominantly Caucasian area and location of Defendants, and after weeks of being stonewalled after a clear and unequivocal offer of employment, Plaintiff has serious concerns that there was regret for hiring a Hispanic staff member.

22. As a result of Plaintiff's foregoing concerns, Plaintiff texted Todd on November 16, 2021 apologizing for coming off as a bother, expressing concerns that nobody was contacting him or following up with him, and he asked for a meeting with human resources and management stating: "I truly feel I am being discriminated against due to my race."

23. Plaintiff's text concern of racial discrimination on November 16, 2021 (for not getting feedback about a start date for nearly 2 weeks after hire) was "protected activity" under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981).

24. Plaintiff's text message (concern of discrimination) prompted Todd to finally respond to him. In her text message on the same date (November 16, 2021), she responded to Plaintiff: "Your starting day is the 21st as you requested for the Sunday / Monday / Tuesday / Wednesday all 11-7 shifts."

25. As of November 16, 2021, it was in writing that Plaintiff complained of racial discrimination. **And** it was in writing that Plaintiff was scheduled for his first week of work commencing on November 21, 2021.

26. As of November 16, 2021, when Plaintiff had finally received a confirmed schedule - - Defendants obviously had **no concern** with Plaintiff's "availability" or scheduling needs or Defendants would not have given Plaintiff a firm schedule for his first week of work.

27. However - - on or about November 17, 2021, only *1 day after* a complaint of racial discrimination and assurance of a set schedule start date, Plaintiff was informed by Quille that after they considered Plaintiff's complaint of discrimination - - the company has decided it was no longer hiring Plaintiff and doesn't want the kind of person who makes such complaints like that.

28. On or about November 20, 2021, Plaintiff tried to communicate with management in person (by appearing at the location) to have them reconsider and permit him to commence

5

working. Plaintiff was then told by Todd that the company decided not to move forward with his hire or prior job offer.

29. In response to Plaintiff's EEOC Charge, Defendants filed a Position Statement with the EEOC. In Defendants' Position Statement, Defendants claimed that Plaintiff's "communication" became "disconcerting" to Defendants and that Defendants suddenly determined Plaintiff's "availability did not align with the needs of [Defendants'] restaurant."

30. The only communication that could be "disconcerting" was Plaintiff's complaint of racial discrimination. And Defendants' rationale that Plaintiff's availability was somehow unsatisfactory is completely contracted by: (1) Defendants having already scheduled Plaintiff for his first full week; (2) Defendants accommodating high school students and other employees with far more restrictive scheduling needs; and (3) that Plaintiff was told point-blank by Defendant's own human resources manger that the sole reason he was not actually being hired was because of his complaint of discrimination.

31. Plaintiff believes and therefore avers that he was indefensibly retaliated against for his complaint of racial discrimination in violation of state and federal laws by not being hired as a crew member with opportunities to escalate into leadership as previously assured.

## COUNT I
### Violations of 42 U.S.C. Section 1981
### Retaliation
### - Against Both Defendants -

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Plaintiff was not hired by Defendants because of his complaint(s) of discrimination.

34. These actions as aforesaid constitute unlawful retaliation under Section 1981.

## COUNT II
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Retaliation)
### - Against Both Defendants -

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff was not hired by Defendants because of his complaint(s) of discrimination.

37. These actions as aforesaid constitute unlawful retaliation under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting retaliation in the future against any actual or prospective employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.   Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.   Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  November 14, 2022